IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SCOTT ADRIAN                                                                                                PLAINTIFF

V.                                                      NO. 14-5018

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Scott Adrian, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed his current applications for DIB and SSI on May 17, 2011, alleging an inability to work since November 10, 2009, due to depression, bipolar disorder, and seizures. (Tr. 108-121, 147, 152). An administrative hearing was held on September 26, 2012, at which Plaintiff appeared with counsel and testified. (Tr. 30-54).

By written decision dated October 23, 2012, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - personality disorder, not otherwise specified, and rule out polysubstance dependence. (20 C.F.R. 404.1520(c) and 416.920(c)). (Tr. 16). However, after reviewing all of the evidence presented,

the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairments listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform unskilled, standardized work, which is simple, routine, and repetitive in nature; supervision required is simple, direct, and concrete; and no contact with the general public, but occasional contact with supervisors and coworkers.

(Tr. 19).  With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff was unable to perform his past relevant work, but that there were other jobs Plaintiff would be able to perform, such as hand packer and production assembler. (Tr. 23-24).

Plaintiff requested a review of the hearing decision by the Appeals Council, which denied that request on November 15, 2013. (Tr. 1-4).  Subsequently, Plaintiff filed this action. (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.

3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the

national economy given his age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

### III. Discussion:

Plaintiff raises the following issues in this matter: 1) The ALJ's findings are not based on substantial evidence; 2) The ALJ erred in discounting Plaintiff's subjective complaints; 3) The ALJ erred in evaluating Dr. McInroe's opinion; and 4) The ALJ erred in his findings of severe impairments.  (Doc. 11).

#### A. Severe Impairments:

Plaintiff argues that the ALJ erred in not finding additional impairments as severe impairments.

In his opinion, the ALJ noted the fact that on October 9, 2006, when Kevin Whisman, Psy.D., performed a Psychological Evaluation, he reported that during the interview, Plaintiff alleged a bipolar disorder, but he believed the symptom presentation as determined through self-report was more likely characteristic of an underlying personality disorder, and that the differential diagnosis was complicated by Plaintiff's reported history of illicit substance use. (Tr. 21, 258).  Dr. Whisman diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | r/o Polysubstance Dependence |
| Axis II: | Personality Disorder NOS with Borderline features (Primary) |
| Axis III: | Client reported pain |
| Axis IV: | Occupational problems |
| Axis V: | GAF - 58 current |

(Tr. 258).

-4-

When Ronald E. McInroe, Psy.D., evaluated Plaintiff on July 6, 2011, he indicated that Plaintiff was a poor historian and had difficulty in recalling events in a coherent and chronological order. (Tr. 276). Dr. McInroe reported that according to information provided by the Social Security Administration, Plaintiff had previously been evaluated and treated through the Green Oaks Behavioral Healthcare Services and was prescribed Valproic Acid, Wellbutrin, and Klonopin, and appeared to have been given a diagnosis of Bipolar Disorder. (Tr. 279). Dr. McInroe gave Plaintiff the following diagnosis:

>   Axis I:      Bipolar II Disorder, by history
>                Generalized Anxiety Disorder
>                Polysubstance Abuse, by history
>   Axis II:     Personality Disorder, NOS (Antisocial/Borderline)
>   Axis V:      GAF - 60

(Tr. 279). Dr. McInroe opined that Plaintiff demonstrated limitation in the ability to communicate and interact in a socially adequate or stable manner and may have difficulty with sustained persistence in completing tasks because of his irritability of mood and personality characteristics. (Tr. 280). As a result, Dr. McInroe opined that Plaintiff would demonstrate deficits in the ability to complete basic work related tasks within an acceptable time frame. (Tr. 280).

On August 2, 2011, non-examining consultant, Christal Janssen, Ph.D., completed a Mental RFC Assessment and Psychiatric Review Technique Form. (Tr. 288, 292). She opined that although Plaintiff may have some problems with persistence and pace, he was able to perform at least simple/repetitive work with incidental interpersonal contact and direct/concrete supervision (unskilled). (Tr. 290). She found that Plaintiff had mild degree of limitation in activities of daily living and moderate degree of limitation in maintaining social functioning and

in maintaining concentration, persistence or pace, and had no episodes of decompensation, each of extended duration. (Tr. 302).[1] It is also noteworthy that Plaintiff indicated that his seizures only occurred when he was asleep. (Tr. 38, 171).

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C.F.R. § 404.1520(c). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities. See Social Security Ruling 96-3p. The Step Two requirement is only a threshold test so the claimant's burden is minimal and does not require a showing that the impairment is disabling in nature. See Brown v. Yuckert, 482 U.S. 137, 153-54 (1987). The claimant, however, has the burden of proof of showing he suffers from a medically-severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

The Court does not believe Dr. McInroe's diagnosis of "Bipolar Disorder, by History" requires the ALJ to conclude that bipolar disorder was a severe impairment. In any event, any omission of a severe impairment is harmless in this case. The ALJ clearly considered all of Plaintiff's mental impairments during the relevant time period, and where the ALJ finds at least one "severe" impairment and proceeds to assess a claimant's RFC base on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir.2006); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including

---

[1] In his decision, the ALJ referred to an October 27, 2011 report completed by Dr. Brad Williams, Ph.D., another State mental health expert, who he contends reviewed and affirmed Dr. Janssen's findings and conclusions. However, said report could not be found in the transcript.

... impairments that are not 'severe' ").

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's conclusions relating to Plaintiff's severe impairments.

### B.     Credibility Analysis:

Plaintiff argues that the ALJ erred in discounting Plaintiff's credibility when he found there was little objective evidence of him seeking treatment and following up with treatment.

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his assessment. The ALJ then discussed the fact that there was very little objective evidence to support the fact that Plaintiff sought and obtained ongoing treatment for his alleged mental impairments from any provider. (Tr. 22). He noted that there was no evidence presented that Plaintiff sought or obtained treatment in the 6 years that lapsed between 2004 and November 2009, when he alleged his disability began, and that there was no evidence in Plaintiff's file that he sought or obtained treatment in the 2 ½ years that lapsed between Plaintiff's alleged onset date and the date of his hearing on September 26, 2012. (Tr. 22). The ALJ also addressed the fact that when Plaintiff was instructed to follow up on certain occasions, he failed to do so. (Tr. 23).

The Court recognizes that Plaintiff alleges he was unable to afford treatment, and that he testified that he had tried to go to a reduced fee clinic, but was unable to afford the $27 per visit. This is a factor that can be considered when Plaintiff does not follow a recommended course of treatment. However, in this case, the ALJ discounted Plaintiff's credibility for other

reasons as well. He noted that none of the doctors who saw Plaintiff offered an opinion that he was disabled or made any statement or recommendation that he was unable to work at a substantial gainful activity level. In fact, Plaintiff performed substantial gainful activity level work from May of 2009 until November of 2009, which detracts from Plaintiff's credibility.

The Court also notes there are some inconsistencies in Plaintiff's statements. In Dr. Whisman's report dated October 9, 2006, Plaintiff reported that his longest stint of employment was for nearly three months. (Tr. 257). In his Disability Report - Adult dated June 14, 2011, Plaintiff indicated that he performed the job of dishwasher/cook at a restaurant from 1996-2007 and as a stocker/cashier from 1996-2010. (Tr. 153). On July 6, 2011, Plaintiff reported to Dr. McInroe that the longest job he ever held was for approximately one year, loading trucks. (Tr. 276). On October 9, 2006, Plaintiff reported to Dr. Whisman that his last use of any drug was "about a year ago." (Tr. 257). On July 6, 2011, Plaintiff reported to Dr. McInroe that until recently he was using marijuana two or three times per week. (Tr. 278). At the hearing held on September 26, 2012, Plaintiff testified that he had not used marijuana for at least two years. (Tr. 40).

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's credibility analysis.

### C.     RFC Determination and Weight Given to Physician's Opinion:

Plaintiff argues that based upon the evidence, the ALJ should have found that Plaintiff would not be able to interact with co-workers and supervisors on a consistent basis, and should have given Dr. McInroe's opinion greater weight.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

-8-

404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In his decision, the ALJ considered and evaluated all of the medical reports, and gave significant weight to the opinion of Dr. Whisman, as he had the opportunity to actually examine the Plaintiff and based his findings and conclusions upon that assessment. (Tr. 23). The ALJ believed Dr. Whisman's assessment was most consistent with the medical evidence of record. The ALJ great weight to the opinion of Dr. Tad Morgan, who conducted a General Physical Examination of Plaintiff on July 27, 2011, and found Plaintiff had no limitations. (Tr. 282-286). The ALJ stated that Dr. Morgan's findings and conclusions were based upon his actual physical examination of Plaintiff and were consistent with the other medical evidence. (Tr. 23). The ALJ gave some weight to the opinion of Dr. McInroe, where his opinion was consistent with Dr. Whisman and the evidence as a whole. (Tr. 23). Finally, the ALJ gave some weight to the State psychological experts where their opinions were also consistent with Dr. Whisman and the

available evidence. (Tr. 23).   The fact that Plaintiff was able to perform substantial gainful activity in 2009, without any treatment or medication, supports the ALJ's RFC determination. In addition, the Court believes the ALJ's RFC determination takes into consideration Dr. McInroe's opinion that Plaintiff's ability to interact socially and adapt to his environment would be within a socially restricted environment, as it provides that there should be no contact with the general public, but occasional contact with supervisors and coworkers.

Based upon the foregoing, the Court finds there is substantial evidence to support the weight the ALJ gave the various opinions of the physicians and his RFC determination.

### D.     Hypothetical Question to the VE:

At the hearing, the ALJ posed the following hypothetical question to the VE:

> Q: ... In hypothetical number one I want you to assume a hypothetical individual possessing the same age, education and work experience which Mr. Adrian possesses. Further assume that this hypothetical individual experiences no limitations sitting, standing, walking and lifting. In fact, the individual's only limitations are nonexertional in nature. This person can perform unskilled standardized work with - involving few, if any , changes. This work is simple, routine and repetitive in nature with one or two-step instructions. This work would be done alone and not in collaboration with others or in a team. This person requires supervision, which is simple, direct and concrete. And this person has no contact with the general public, but does have ability to maintain occasional contact with coworkers and supervisors. Do you have those variables?
>
> A.  I do.
>
> Q. Could that hypothetical individual perform the claimant's past job?
>
> A.  No, sir. Semi-skilled work.
>
> Q. Okay. Okay. Are there any jobs that hypothetical individual could perform?
>
> A. Yes, sir. ...I'll lead off with a medium one. ...Hand packer or packager is one of these kinds of jobs...Another example, production assembler...these are light

>     and unskilled...

(Tr. 51-52).  The Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly,  the Court finds that the VE's responses to the hypothetical questions posed by the ALJ constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing the jobs of hand packer and production assembler..  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### E. **Whether Substantial Evidence Supports the ALJ's Findings**:

Based upon the foregoing, the Court finds there is substantial evidence to support the ALJ's findings.

## IV. Conclusion:

Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 30th day of April, 2015.

> /s/ Erin L. Setser
> HONORABLE ERIN L. SETSER
> UNITED STATES MAGISTRATE JUDGE